UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WILLIAM BAHNSEN,

                      Plaintiff,              **REPORT AND**
                                           **RECOMMENDATION**
       -against-                 CV 17-4545 (SJF)(AYS)

THE TOWN OF BROOKHAVEN,

                      Defendant.
-------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

       Plaintiff William Bahnsen ("Plaintiff" or "Bahnsen") commenced this action alleging

claims of employment discrimination and failure to pay overtime wages against Defendant Town

of Brookhaven ("Defendant" or the "Town"). Docket Entry herein ("DE") 1. His employment

discrimination claims were based upon the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621 (the "ADEA") and 42 U.S.C. §1983 ("Section 1983"). Plaintiff's wage claims were

based upon the Fair Labor Standards Act, 29 U.S.C. § 216 (the "FLSA").

       After conferences and proceedings before this Court, Plaintiff filed an amended

complaint. DE 20. Thereafter, Defendant moved to dismiss. That motion was referred to this

Court by the Honorable Sandra J. Feuerstein, for Report and Recommendation. On March 6,

2018, this Court entered an order recommending that Plaintiff's FLSA claims be dismissed

without prejudice (the "2018 R&R"). In addition to the recommendation regarding Plaintiff's

FLSA claims, the 2018 R&R recommended that dismissal be denied as to Plaintiff's ADEA and

Section 1983 employment discrimination claims. The District Court adopted the 2018 R&R,

adding that unless Plaintiff filed an amended complaint re-pleading his FLSA claims, all such

claims would be dismissed in their entirety with prejudice. No such pleading was ever filed. This

left only Plaintiff's employment discrimination claims to proceed.

On October 25, 2019, Defendant moved for summary judgment. DE 44. That motion is

presently before this Court, upon referral by the District Court. For the reasons set forth below, it

is respectfully recommended that the motion for summary judgment be granted.

## FACTUAL BACKGROUND

I.    Basis of Facts Recited Herein

The facts set forth below are drawn from the parties' statements of facts submitted

pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and

Eastern Districts of New York (the "Rule 56.1 Statements"). DE 48-49.

Defendant's motion contains its Rule 56.1 Statement. DE 48.  That statement references

the factual affidavit of the transcript of a sworn interview conducted of Plaintiff on September 8,

2016. It also references the factual affidavit of Emily Pines, the Defendant Town's Chief of Staff

(the "Pines Affidavit"). DE 45. Annexed to the Pines Affidavit is the transcript of the September

hearing. Also submitted by Defendant is an affidavit of counsel. Annexed to that affidavit is the

deposition testimony of Plaintiff (including copies of exhibits marked during the deposition), as

well as the transcript of the deposition of Plaintiff's supervisor, Arthur Gerhauser ("Gerhauser").

DE 46.

Plaintiff submits his own Rule 56.1 Statement. DE 49. As required, that statement

indicates facts about which there is no dispute, as well as those denied by Plaintiff. Plaintiff's

Rule 56.1 Statement also includes statements as to his view of the facts. Additionally, Plaintiff

submits his personal affidavit. DE 50. Plaintiff states that the information contained in his

affidavit is offered to clarify certain points raised in Defendant's motion, and to respond to

2

Defendant's Rule 56.1 Statement.  DE 50 ¶ 2. The Court notes that any opposition to facts set forth in Defendant's Rule 56.1 Statement should be properly set forth only in Plaintiff's responsive Rule 56.1 Statement. Indeed, Plaintiff has availed himself of the opportunity to contradict Defendant's facts in his responsive statement. With respect to Plaintiff's submission of a personal affidavit in addition to his Rule 56.1 Statement, the Court is guided by the law that a party may not "create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Patacca v. CSC Holdings, LLC., 2019 WL 1676001, at *6 (E.D.N.Y. April 17, 2019). Moreover, "[w]here inconsistencies exist between a non-movant's affidavit and corresponding deposition testimony, which inconsistencies the non-movant party makes no effort to reconcile or otherwise explain, a court may disregard those statements." Id.

The Court now turns to discuss the facts revealed by the documents described above. Unless otherwise indicated, the facts recited below are undisputed.

II.    Facts

A.    Plaintiff's Age and Employment

Plaintiff was born on November 11, 1954. DE 49 at ¶ 1[1]. He was first employed by the Town as a Building Inspector, within the Town's Building Department, beginning on or about April 9, 2001. DE 49 at ¶ 5. Thus, when he began his employment with the Town, Plaintiff was 47 years old. DE 49 at ¶ 6. Plaintiff was continually employed by the Town until his resignation

---

[1]    Defendant's Rule 56.1 Statement appears on the docket herein as DE 48.  Plaintiff's responsive Rule 56.1 statement appears as DE 49. Where there is agreement as to facts, the Court cites only to DE 49 -- Plaintiff's responsive Rule 56.1 Statement. Additionally, where there is agreement as to facts the Court does not cite unless otherwise noted, to documents underlying the statements such as underlying deposition or affidavit testimony.

which was submitted to the Town on September 27, 2016. That resignation became effective on October 2, 2016. DE 49 at ¶ 8. At the time of his resignation, Plaintiff was 62 years old.

As a Town Building Inspector (Plaintiff's initial job title), Plaintiff's job consisted of performing building inspections and related paperwork. DE 49 at ¶ 7. On or about December 10, 2007 (at the age of 53), Plaintiff was promoted to a provisional appointment as a Senior Building and Zoning Inspector. DE 49 at ¶ 9-10. He retained this provisional title and appointment until approximately December 22, 2008, when he failed a required Civil Service examination. DE 49 at ¶¶ 11-12. He was then reinstated to his prior position of Building Inspector. DE 49 at ¶ 13-14. Plaintiff remained in this job title until June 13, 2016, when he was promoted to the position of Senior Building Inspector. DE 49 at ¶ 15-16. At the time of this promotion, Plaintiff was 62 years old. DE 49 ¶ 17. To retain the 2016 appointment, Plaintiff was required to complete a twelve-week probationary period. DE 49 at ¶ 18-19. On August 29, 2016, because Plaintiff failed his probationary period, he was removed from the title of Senior Building Inspector. He was then returned to his prior position of Building Inspector. DE 49 at ¶ 21.

Plaintiff continued as a Building Inspector until his resignation. DE 49 at ¶ 22. He found new employment after his retirement from the Town. Plaintiff receives a Town pension, reflecting his eighteen years of service, and his health insurance is paid by the Town. Bahnsen Deposition annexed to Affidavit of Jessica Moller, Esq. ("Bahnsen Dep.") DE 46 at 180.[2] Plaintiff claims that if he had not retired early, he would have received a larger pension, reflecting twenty-five, instead of eighteen years of service. Id. at 197.

---

[2] For ease of reference, page numbers of voluminous documents annexed as exhibits to affidavits are stated herein according to the docket entry number, and not the original document number.

B.    <u>Conduct that Preceded Plaintiff's Resignation</u>

1.    <u>Allegations as to Misuse of Town Vehicle</u>

In August of 2015, eleven days prior to the expiration of Plaintiff's 2016 probationary period, allegations of Plaintiff's misconduct came to the attention of the Town. DE 49 at ¶ 20. That misconduct involved allegations that Plaintiff used a Town vehicle for non-Town business. DE 49 at ¶ 25. It is the Town's position that Town vehicles are to be used only for Town business. DE 49 at ¶ 23. Plaintiff denies this statement. It is his position that he sought and received approval from Gerhauser to use a Town vehicle to get to his part-time job at the Village of Mastic Beach (a village outside of the Town). DE 49 at ¶ 23. Thus, it is Plaintiff's position that the Town, through Gerhauser, was aware of and approved his use of a Town vehicle. DE 49 ¶ 25.

In addition to the alleged unauthorized use of a Town vehicle, it also came to the attention of the Town that the vehicle Plaintiff used for work did not have the required Town seals affixed to it, and that those seals may have been removed by Plaintiff. DE 49 ¶ 26. This fact is not disputed by Plaintiff.

2.    <u>The August 2016 Investigation</u>

The 2016 allegations regarding misuse of a Town vehicle led to the commencement of an investigation against Plaintiff. DE 49 at ¶ 27. Plaintiff believes that the reason the Town began any investigation of his conduct was because another employee was in trouble, and that employee "ratted" Plaintiff out to Emily Pines. DE 49 at ¶ 64. In any event, in or about August 2016, an investigation of Plaintiff's conduct as a Town employee was undertaken. DE 49 at ¶¶ 25-27. As part of that investigation Plaintiff was given a written directive to participate in an interview where he was expected to respond truthfully to all questions posed. DE 49 at ¶ 28. That

5

interview took place (under oath) on September 8, 2016, and a transcript thereof is properly

before the Court. The Town states that its investigators interviewed Plaintiff. DE 49 ¶ 29.

Plaintiff disputes having been interviewed by any "investigators" or by Pines, but states that he

participated in an interview by attorneys, and answered all questions to the best of his

recollection. DE 49 at ¶¶ 28-29.

      During Plaintiff's interview, issues were discussed regarding the use of a Town vehicle

while Plaintiff was working at his second job at Mastic Beach, and the removal of Town seals

from its vehicles. DE 49 at ¶ 30. It is the Town's position that Plaintiff was using the Town

vehicle to commute to his job at Mastic Beach, that he used the vehicle to perform work at

Mastic Beach, and that Plaintiff was working at Mastic Beach during time that he would

normally have been working for the Town. Id.

      The parties do not dispute that Plaintiff worked at Mastic Beach. Nor is there any dispute

that Plaintiff's work at Mastic Beach had "nothing to do with" Plaintiff's work for the Town. DE

49 ¶ 35. Additionally, Plaintiff does not dispute the use of a Town vehicle while working at

Mastic Beach. He states, however, as noted above and discussed in further detail below, that his

work and the use of the Town vehicle was expressly approved by Gerhauser. Id.

      3.     The Follow-up Investigation

      The Town states that because of admissions made by Plaintiff during his September 8,

2016 interview, it expanded its investigation to consider whether there were prior periods of time

when Plaintiff engaged in similar behavior. As part of that investigation, copies of Plaintiff's

time records were obtained from Mastic Beach. Those records were reviewed, and compared

with timesheets that Plaintiff submitted to the Town. DE 49 ¶ 32. As a result of that comparison,

the Town became aware that there were "a number of instances" where Plaintiff's Town

timesheets reported work for the Town while, at the same time, his Mastic Beach timesheets showed that he was working there. DE 49 ¶ 33. The Town supports this statement of fact by reference to original documents showing ten separate instances of overlapping time reflected in the timesheets of the Town and those of Mastic Beach. DE 49 ¶ 34. Plaintiff responds to these facts by characterizing the Mastic timesheets as inaccurate, and by adding that his Town timesheets were always reviewed, and approved by his supervisor, Gerhauser. DE 49 ¶ 33-34. He states that he never "double-dipped," and that he worked for Mastic Beach during times when he was using vacation time earned from the Town. DE 50 ¶ 12.[3]

Gerhauser's deposition is properly before this Court. While Gerhauser testified that he allowed Plaintiff to park his Town vehicle at the Mastic Beach Village Hall, he stated that he never authorized the use of a Town vehicle for Mastic Beach duties. Deposition of Arthur Gerhauser, annexed as Exhibit F to the Affidavit of Jessica Moller ("Gerhauser Dep.") DE 46 at 266-67. In particular, Gerhauser stated that it would be beyond any authorization granted for Plaintiff to take the Town vehicle out on inspections conducted for the Village of Mastic Beach. Id. Gerhauser also testified that Plaintiff admitted to such use of a Town vehicle. Id. at 267-68. He further testified that it was his understanding that Plaintiff resigned to avoid disciplinary action. Id. at 293.

Despite stating that he did nothing wrong, Plaintiff testified at his deposition that looking back, he considers what he did with his Mastic Beach time sheets to have been wrong. Bahnsen

---

[3] Plaintiff's affidavit also refers to work performed "off the clock" and states that the Town underpaid him. DE 50 ¶ 12. While such allegations may have been relevant if Plaintiff had taken advantage of the invitation to pursue an FLSA claim by way of an amended complaint, he never pursued any such claim.

Dep. at 172; 173-74. He adhered to the position, however, that he did nothing wrong with respect to the Town. Bahnsen Dep. at 174.

In connection with its continuing investigation, the Town attempted to schedule a follow-up interview to discuss with Plaintiff the information it obtained. However, no follow-up interview was ever conducted. DE 49 ¶ 37. Indeed, prior to any such interview, Plaintiff resigned. DE 49 ¶ 38. Thus, on or about September 27, 2016, the Town received a letter from Plaintiff advising that he would be resigning his employment with the Town effective October 2, 2016. DE 49 ¶ 51-52. Plaintiff's letter of resignation states that he was resigning with "deep regret", but that he was "ready to pursue new challenges".  He further stated that he would always remember his time with the Town and would be available to help during a period of transition. DE 49 ¶ 53.

Despite the text of his letter, Plaintiff testified at deposition that his resignation letter was "inaccurate." Dep. at 144. He stated that he felt "threatened, intimidated and coerced." Id. at 144. He also testified that when he sent his letter of resignation, he had no idea why he was resigning. Id. When asked about this response, Plaintiff referred to a conversation with a family member that took place after his resignation. Id. He testimony is somewhat unclear, but he appears to state that when he resigned, he had only "inklings" from "talking to union people what they might be after me for," but no one could confirm any reason to him. Id. at 145. Plaintiff's conversations with his union representatives are discussed in greater detail below. However, in his affidavit submitted in response to Defendant's Rule 56.1 statement, Plaintiff makes no reference to such conversations. He states only that he felt "threatened, intimidated and coerced" to resign. DE 50 ¶ 5-6. He further states that he was "scared," and did not feel he could proceed with a hearing to defend himself and jeopardize himself and his family. DE 50 ¶ 7.

4.     Plaintiff's Consultations With Union Officials

Prior to his resignation, Plaintiff discussed his work at Mastic Beach, and issues with respect to his timesheets with union officials, Dave Wamken, Mike Morris and Walter Dunn. DE 49 at 39-42. Plaintiff testified at his deposition that Morris advised Plaintiff that if he stole time from Mastic Beach, the Town would think that he committed fraud on the pension system. Bahnsen Dep. at 151. Bahnsen stated that the Town did not have a pension system, but that he thought that "people on the third floor" (presumably a reference to Town employees) thought that he committed such fraud. Bahnsen Dep. at 151.

Plaintiff testified that Dunn, the President of his union, advised him that the Town believed it would be in Plaintiff's best interest to resign, because, if he did not resign, the Town would bring him up on charges. Plaintiff was further advised by Dunn that if he was found guilty on such charges, he would be dismissed. Bahnsen Dep. at 159. Dunn also advised Plaintiff that if any charges were criminal in nature, those charges would be sent by the Town to the proper authorities, meaning the District Attorney. Bahnsen Dep. at 159. At his deposition, Plaintiff also acknowledged speaking to other union officials prior to his resignation. Bahnsen Dep. at 161-63.

As noted, Plaintiff testified that he had "inklings" as to the why he was resigning. Those "inklings" referred to issues regarding Plaintiff's time sheets and were communicated to Plaintiff by Morris. Bahnsen Dep. at 147. Plaintiff recognizes that there was nothing illegal or inappropriate about the Town preparing or bringing charges against him. Bahnsen Dep. at 161. Nor does he challenge the propriety of referring criminal conduct to the District Attorney.  Id. While Plaintiff testified that "in hindsight" he should have inquired as to what the Town had "on him", he did not do so.  Instead, he resigned. Bahnsen Dep. 160-61.

Despite Plaintiff's position in this lawsuit (that he resigned because the Town threatened

him with the pursuit of criminal charges), there is no evidence that anyone with the Town

threatened Plaintiff either with termination, or the pursuit of criminal charges. Instead, as noted

above, any discussion regarding the pursuit of any criminal charges was communicated to

Plaintiff by Dunn, a union official.

D.   Facts Regarding Plaintiff's Age and Allegations of Disparate Treatment

 As noted, Plaintiff was 47 years old when he was first hired by the Town. He was 53

years old at the time of his first promotion. He was 62 years old when promoted again, and the

same age at his resignation. While the Town states that it did not consider Plaintiff's age in any

way in connection with its investigation of him, Plaintiff disputes this fact, and states that the

Town has a "history of disparate treatment and discipline of senior employees in order to force

them out prior to reaching retirement age". DE 49 at ¶ 60.

Despite Plaintiff's allegations regarding age discrimination, he testified at his deposition

that the "real basis" that the Town discharged him was because he was "the third highest guy

paid in the building department and if you got rid of [him] and replaced [him] with a guy making

$50,000 a year, the savings to the Town was probably in excess of $175,000 a year". DE 49 ¶ 63.

Plaintiff explains that his salary was tied to his age and years of experience with the Town. Id.

Plaintiff has submitted no evidence in support of any assertion that the Town had a policy of

terminating senior employees who were high wage earners.

Plaintiff's opposition to summary judgment, like his complaint, alleges that the Town has

engaged in a pattern and practice of terminating or "coercing resignation from similarly situated

employees over the age of forty." DE 1 at ¶ 21. As also set forth in his pleading, Plaintiff

reiterates his position that the Town has a "history" of finding some "minor or non-existent

10

transgression, something that a younger person would get a slap on the wrist for, if any discipline at all, and blow it out of proportion in order to terminate the senior employee or pressure them to resign under fear of losing their pension, criminal charges or the like." DE 50 ¶ 8. Plaintiff characterizes the Town's attempt "to make it seem as though they terminated me for theft of time is ridiculous" DE 50 ¶12. In his complaint, Plaintiff named nine separate individuals over the age of forty. See id.

Now that discovery is closed, and the case is at the summary judgment stage, none of the nine individuals referred to in the complaint have been deposed. Nor have any of these individuals submitted affidavits in connection with Plaintiff's opposition to this motion. Indeed, Plaintiff has not, in opposition to summary judgment, mentioned any particular circumstances regarding the alleged infractions committed by these individuals, nor any discipline imposed. Indeed, Plaintiff agrees in his Rule 56.1 statement, that he has no personal knowledge as to the facts with respect to any of the employees set forth in his pleading. DE 49 at ¶ 65. Instead, he states that his knowledge regarding his claims of disparate treatment arises from his presence at union meeting where circumstances surrounding these individuals were discussed. DE 50 at ¶12.

Specifically, in his affidavit submitted in opposition to Defendant's motion, Plaintiff states that in his capacity as a Union Vice President he was involved in discussions during which he personally observed the Town pursue more severe disciplinary action against senior employees, as compared to younger employee with similar infractions. DE 50 ¶¶ 3-4. However, despite Plaintiff's statements as to acquiring personal knowledge of disparate treatment of comparators, he does not connect any particular individual, nor circumstances of misconduct, with any discipline or the lack thereof.

III.   Defendant's Motion

Defendant seeks summary judgment as to Plaintiff's remaining claims of employment discrimination, whether based upon the ADEA or Section 1983. First, the Town notes that the now clearly undisputed fact that Plaintiff voluntarily resigned confirms that he suffered no adverse employment action. As to the claim that Plaintiff was constructively discharged because the Town threatened him with criminal charges, Defendant notes that it was Plaintiff's union, and not the Town, that brought up the possibility of Plaintiff facing criminal charges. Thus, it is argued, there is no support for the claim that Plaintiff resigned because the Town threatened him with the pursuit of criminal charges. Even if that threat came from the Town, it is argued that a threat of termination – even a threat including the bringing of criminal charges – is insufficient to sustain a claim of constructive discharge.

The Town further argues that even if Plaintiff's claim of constructive discharge is sufficient to show adverse action, it is nonetheless entitled to summary judgment because the evidence shows that age had nothing to do with Plaintiff's discharge. First, it is argued that Plaintiff fails to establish that anything occurred under circumstances giving rise to an inference of age discrimination. Moreover, it is argued that Defendant has come forward with a non-pretextual reason for any employment action.

As to Plaintiff's Section 1983 claim, the Town argues (in addition to the arguments set forth above) that any equal protection claim must be dismissed because Plaintiff cannot show that he was treated differently from members outside of his protected class, i.e., he cannot show disparate treatment of younger individuals who engaged in conduct similar to that of Plaintiff. Nor, it is argued, can Plaintiff show that any Town action lacked a rational basis. Finally, Defendant argues that Plaintiff cannot, as he must in the context of Section 1983, establish any

12

question of fact as to an official unlawful policy as required to support a claim of liability under

Monell v. Dep't of Soc. Svcs., 436 U.S. 658 (1978).

For his part, Plaintiff argues that the evidence shows that genuine issues of fact exist

precluding summary judgment. He states that when the facts are viewed (as required) in the light

most favorable to him, a reasonable juror could conclude that his resignation was coerced. He

also argues that a question of fact exists as to the question of whether the Town engaged in

unlawful discrimination based upon age. With respect to the Town's allegations of wrongful

conduct, Plaintiff acknowledges that he removed the Town logo from its vehicle while working

at Mastic Beach. However, he denies that any other conduct was wrongful.

DISCUSSION

I.   Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict

for the non-moving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir.

2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law.

Id. The party moving for summary judgment is first responsible for demonstrating the absence of

any genuine issue of material fact. Celotex, 477 U.S. at 322. Summary judgment is appropriate

when the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

13

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237 *4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

While the Second Circuit often notes the caution to be employed when deciding whether to grant summary judgment in cases where an employer's intent is at issue, that court has noted similarly that "the salutary purposes of summary judgment-avoiding protracted and harassing trials-apply no less to discrimination cases than to ... other areas of litigation." Tolbert, 2015 WL 3875237 *4; see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (summary judgment appropriate to avoid "protracted, expensive and harassing trials"); Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"); Kohutka v. Town of Hempstead, 994 F. Supp. 2d 305, 316 (E.D.N.Y. 2014).

With these standards in mind, the Court turns to discuss the legal principles to be applied and the merits of the motion.

II.    Plaintiff's Claims: Legal Principles

    A.    Plaintiff May Pursue Both His 1983 and ADEA Claims

14

As noted above, Plaintiff's employment discrimination claims are alleged pursuant to the ADEA and Section 1983. As set forth in the 2018 R&R, the Second Circuit has not adopted a per se rule prohibiting a plaintiff from pursuing both theories in support of claims of age-based discrimination. See Nicosia v. Town of Hempstead, 2017 WL 9485669, at *10 (E.D.N.Y. June 14, 2017); Anand v. N.Y. State Dep't of Taxation and Finance, 2013 WL 3874425, at *11 (E.D.N.Y. July 25, 2013). However, for a Section 1983 claim to be pursued alongside an ADEA claim, the former claim must be based upon the violation of a distinct constitutional right.  Here, Plaintiff bases his Section 1983 claim upon an alleged violation of the Equal Protection Clause of the Fourteenth Amendment. In view of the fact that Plaintiff may pursue both an ADEA claim, and a claim under Section 1983 the Court will analyze the motion under both theories for relief.

B.      The ADEA

The ADEA forbids an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). Where a plaintiff claims age-related "disparate treatment" they must prove that age "actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

In order to establish a prima facie case of termination in violation of the ADEA, a plaintiff must show: (1) that he was within the protected age group, (2) that he was qualified for the job, (3) that he suffered an adverse employment action, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003). To raise an inference of discrimination, an ADEA plaintiff must

15

show that he was treated less favorably than a similarly situated employee outside of the protected group. Cincotta v. Hempstead, 2018 WL 2198761, *14 (E.D.N.Y. May 14, 2018).

C.      Section 1983

Section 1983 and the Equal Protection Clause protect public employees from various forms of employment discrimination. Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); Chizman v. Nassau Bd. Of Cooperative Educ. Servs., 2015 WL 13721528, at * 3 (E.D.N.Y. August 20, 2015). A Section 1983 claim requires the plaintiff to establish two elements: "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Clay v. County of Suffolk, 2019 WL 4346446, at * 11 (E.D.N.Y. September 11, 2019). At the summary judgment stage, a Section 1983 equal protection claim alleging age discrimination is analyzed under the same framework as a claim brought under the ADEA. Chizman, 2015 WL 13721528, at * 3. Thus, the same elements set forth above are required to state a prima facie case. See Cincotta v. Hempstead Union Free Sch.Dist., 313 F. Supp. 3d 386, 404 (E.D.N.Y. 2018). However, where, as here, a Plaintiff alleges a violation of Section 1983 based upon allegations of age discrimination, the Equal Protection Clause is violated only where an employer's action is held to have lacked a rational basis. See Nicosia v. Town of Hempstead, 2017 WL 9485669, at * 19 (E.D.N.Y. June 14, 2017).

D.      The McDonnell-Douglas Framework

Courts apply the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to determine whether a plaintiff's Section 1983 or ADEA employment discrimination claim survives summary judgment. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010)

16

(ADEA); Naumovski, 934 F.3d at 214 (Section 1983). Pursuant to that framework, a plaintiff

opposing summary judgment must demonstrate a prima facie case of discrimination as set forth

above, i.e., that: (1) that plaintiff belonged to a protected class; (2) that he was qualified for the

position he held; (3) that he suffered an adverse employment action; and (4) that the adverse

employment action occurred under circumstances giving rise to an inference of discrimination.

Ben-Levy v. Bloomberg L.P., 518 F. App'x. 17, 2013 WL 1810953, at * 1 (2d Cir. 2013). The

Court notes that the burden of showing a prima facie case is "not onerous." Tex. Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to

proffer a legitimate, nondiscriminatory reason for the complained of action. Id. "Upon the

defendant's articulation of ... a non-discriminatory reason for the employment action, the

presumption of discrimination arising with the establishment of the prima facie case drops from

the picture," and the burden shifts back to the plaintiff to "come forward with evidence that the

defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Id.

To establish pretext, an ADEA Plaintiff must show that a reasonable juror could conclude that

his age was the "but for" cause for the employment decision. Delaney v. Bank of Am. Corp., 766

F.3d 163, 168 (2d Cir. 2014); Ingrassia v. Health & Hosp. Corp., 130 F. Supp. 3d 709, 720

(E.D.N.Y. 2015). Likewise, for a claim under Section 1983 to proceed, a plaintiff must also show

"but for" causation. Naumovski v. Norris, 934 F.3d 200, 214 (2d Cir. 2019) (applying "but for"

causation to Section 1983 claim of employment discrimination); Greenberg v. State Univ. Hosp.

Downstate Med. Ctr., 2019 WL 4752018, at *21 (E.D.N.Y. September 29, 2019).  The "but for"

causation standard "is not equivalent to a requirement that age was the employers only

consideration," but, instead that the adverse employment "would not have occurred without it." Delaney, 766 F.3d at 169 (citations omitted).

As recently set forth by the Second Circuit, to establish pretext in a case under Section 1983, "a plaintiff must establish that the employer's stated reason would not, alone, constitute a sufficient basis for pursuing an adverse action. In other words, a § 1983 plaintiff must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action." Naumovski, 934 F.3d at 214-15; see also id. at 216 (plaintiff's burden at the third stage of the McDonnell Douglas analysis is "to establish that discrimination played . . . a decisive role" i.e., that "a reasonable jury could find that Defendants would not have terminated [plaintiff] based on their stated reasons alone").

Ultimately, the burden of persuading the trier of fact as to intentional discrimination remains with the plaintiff.  At the summary judgment stage, he must show that "the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." Clay, 2019 WL 4346446, at *12.

Often, the question of whether plaintiff meets the prima facie burden of demonstrating an inference of discrimination is "indistinguishable from the question of whether the employer's actions served merely as a pretext for some disguised discriminatory animus towards the plaintiff." Chioke v. Dep't. of Educ. of the City of New York, 2018 WL 3118268, at *7 E.D.N.Y. June 25, 2018) (quoting, Jimenez v. Donahoe, 968 F. Supp. 2d 609, 618 (S.D.N.Y. 2013). Therefore, "[d]espite the elaborate process set up in McDonnell Douglas, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action." Id.

18

(citation omitted). Ultimately, as noted, the question is whether the evidence relied upon in opposition to summary judgment allows a reasonable fact-finder to determine that defendant engaged in discriminatory conduct. Patacca, 2019 WL 1676001, at *6.

III.    Disposition of the Motion

Turning to the merits of the motion, there is no dispute as to the Plaintiff's membership in a protected class. The Court holds further, for the purposes of the motion, that Plaintiff was qualified to hold the position of Senior Building Inspector. The Court turns to discuss the remaining two elements of the McDonnell-Douglas analysis, i.e., whether Plaintiff was subject to an adverse employment action and, if so, whether that action occurred under circumstances giving rise to an inference of age discrimination. The Court also considers whether Plaintiff can create an issue as to whether the Town's stated reasons for its employment action were a pretext for age discrimination.

A.    Adverse Action

As to adverse action, Plaintiff claims to have suffered a constructive discharge. Such discharge occurs when, "from an objective perspective, 'the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Linnell, 2018 WL 1611370, 10 (E.D.N.Y. March 30, 2018) (quoting Morris v. Schroder Capital Mgmt. Int'l, 481 F.3d 86, 88 (2d Cir. 2007)). The burden of showing constructive discharge is high. See Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010) (noting that standard for constructive discharge is higher than standard for establishing hostile work environment). Thus, an employee who resigns cannot rely merely on the fact that that he disagreed with his employer's criticisms of his work, failed to receive an anticipated raise, or was subject to "working conditions that were difficult or unpleasant." Id.

19

The factual question presented is whether "a rational trier of fact" could find that the employment conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Id. (citations omitted); see Ingrassia, 130 F. Supp.3d at 724 (where a "reasonable person subjected to the same conditions as the plaintiff would have felt compelled to step down," constructive discharge claim not subject to dismissal).

While the 2018 R&R recommended against dismissal on the pleadings for failure to adequately allege constructive discharge, this Court reaches the opposite conclusion here, at the summary judgment stage. This is because the facts developed during discovery, and Plaintiff's failure to amplify his pleadings with admissible evidence in support of his claim, show that no rational juror could conclude that Plaintiff suffered constructive discharge.

First, there is no question that Plaintiff resigned. His letter of resignation is before the Court and indicates an amicable parting of the ways between Plaintiff and the Town. Despite the language of his letter of resignation, Plaintiff claims that he was forced to resign, and afraid to stay with the Town. His claim rests upon the allegation that the Town threatened him with the pursuit of criminal charges. The evidence shows, however, that the Town never made such a threat. Importantly, the only mention that Plaintiff's conduct was somehow criminal in nature came from Plaintiff's union representative, and not from the Town.

Indeed, there is no evidence that the Town ever made any threat to terminate Plaintiff, whether based upon misconduct or criminal conduct. Instead, the evidence shows only that the Town investigated Plaintiff for misconduct. Specifically, Plaintiff was properly investigated for the unauthorized use of Town vehicles, removal of Town seals from its vehicles, and for working off-site while records reflected that he was working for the Town. There is no question that the investigation of Plaintiff was well-founded. Even Plaintiff agrees that his conduct in connection

20

with his timesheets was wrong. Plaintiff was free to fight any charges stemming from his use of a Town vehicle, affixing the Town seal, and/or discrepancies on his timesheets. He could have argued to the Town, as he is arguing now, that any work performed outside of the Town was conducted with its full knowledge and permission. However, instead of participating in the Town's investigation and arguing his innocence, he chose to resign.

Under these circumstances, Plaintiff creates no issue of fact regarding his resignation and no rational juror could conclude that Plaintiff was subject to a constructive discharge. The law is clear, a claim of constructive discharge is not properly maintained upon the allegation that a plaintiff, fearing termination, resigned rather than face disciplinary charges. See Collazo v. County of Suffolk, 163 F. Supp. 3d 27 (E.D.N.Y. 2016); Bailey v. New York City Bd. Of Educ., 536 F. Supp.2d 259, 266 (E.D.N.Y. 2007). Even if the Town threatened Plaintiff with termination (which the evidence shows is not the case) a threat of termination alone would be insufficient to sustain a claim of constructive discharge. Weisbecker v. Sayville Union Free Sch. Dist., 890 F. Supp.2d 215, 234 (E.D.N.Y. 2012). As noted above, there is simply no evidence that the Town made any threat to terminate Plaintiff, much less to pursue criminal charges against him. Instead, the only mention of such charges came from Plaintiff's union representative. Under these circumstances, Plaintiff fails to show any question of fact as to adverse action in the form of constructive discharge. Because there was no constructive discharge, Defendant is entitled to summary judgment. It is further entitled to summary judgment for the reasons set forth below.

B.    Inference of Discrimination/Lack of Pretext

An inference of discrimination can be found in circumstances leading up to the claimed adverse action, as well as facts showing the more favorable treatment of individuals outside the

employee's protected group. <u>Collazzo v. County of Suffolk</u>, 163 F. Supp. 3d 27 (E.D.N.Y. 2016).

"The standard for whether an inference of discrimination can be drawn is flexible and no specific

type of proof is required." <u>Id.</u> Where a Plaintiff can show an inference of discrimination, and

Defendant points to a legitimate non-discriminatory reason for the challenged employment

action, the burden shifts back to Plaintiff to "establish pretext by demonstrating that the

defendant was in fact motivated in part by the prohibited discriminatory animus." <u>Id.</u> (citation

omitted). As noted, pretext is shown only by showing that the reason offered by the employer is

"either false or inadequate to support the adverse employment action." <u>Naumovski</u>, 934 F.3d at

214-15.

Here, even if Plaintiff could create an issue of fact as to adverse action, his claim would

nonetheless fail because his separation from employment did not occur under circumstances

giving rise to any inference of age discrimination. Nor can he show that any action by the Town

with respect to his employment was a pretext for the non-discriminatory reason offered by the

Town to support its decision to investigate Plaintiff's conduct.

In an effort to show that age was a factor in the Town's decision to investigate him,

Plaintiff relies only on his unsupported assertion that younger individuals were treated

differently, and that he was charged with misconduct because he was one of the highest earning

individuals employed by the Town. Plaintiff's failure to show disparate treatment of any

similarly situated comparators outside of his age group is fatal to his effort to raise such an

inference of discrimination based upon disparate disciplinary treatment of similarly situated

individuals. Moreover, the allegation in Plaintiff's affidavit in opposition to summary judgment,

<u>i.e.</u>, that the Town targeted high wage earners – who, because of seniority were also older

workers – is insufficient to raise an inference of discrimination. "[A]ge and years of service are

analytically distinct" such that an employer can consider one and not the other. Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993). Thus, "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age," as is typical with long tenure and higher salaries. Id. Benyard v. White Plains Hosp. Med. Center, 2013 WL 60903733, at * 4 (S.D.N.Y. November 12, 2013) (Plaintiff's reference only to her "years of service and salary" insufficient to defeat summary judgment on ADEA claim). Under the facts here, Plaintiff's seniority and high rate of pay do not raise any inference of discrimination.

Even if an inference of discrimination was raised, Plaintiff fails to survive summary judgment because he cannot show that the Town's investigation was a pretext for discrimination. The evidence shows that Plaintiff was investigated, not because of his age, but because it came to the attention of the Town that he had engaged in misconduct regarding the use of a Town vehicle. The evidence also shows that while working for another entity Plaintiff's timesheets showed that he was working for the Town.

Plaintiff attempts to show pretext by relying on the permission alleged to have been granted by Gerhauser to use the Town's vehicle to work at Mastic Beach. While Gerhauser testified as to his knowledge of Plaintiff's use of the Town vehicle to drive to Mastic Beach Village Hall, he denies granting Plaintiff permission to use his vehicle to conduct inspections for Mastic Beach. There may indeed be a question of fact as to whether Gerhauser gave Plaintiff permission to use his Town vehicle, and as to the scope of that permission. However, there is no question but that the use of a Town vehicle for non-Town purposes was prohibited. Nor is there any question that Plaintiff's work at Mastic Beach had nothing to do with his work at the Town, or that the use of a Town vehicle for non-Town business was prohibited. There is also no

question but that Plaintiff improperly removed the seal from his Town vehicle while working at

Mastic Beach.  For these reasons, it is clear that the reasons for the Town investigating Plaintiff

(the only action taken by the Town with respect to Plaintiff's employment) were not a pretext for

discrimination. Instead, they were clear and unbiased reasons for undertaking the investigation of

Plaintiff. Accordingly, even if any evidence supported Plaintiff's claims of age discrimination,

(and there is none) such discrimination could not have been the "but for" reason for the Town's

investigation.

      C.    <u>Equal Protection/Monell</u>

The discussion above disposes of both Plaintiff's ADEA and his Section 1983 claims.

Additionally, Plaintiff's Section 1983 claim fails also because he fails to show, as he must, that

he was treated differently from other similarly situated employees. Again, the Court notes that

Plaintiff has submitted no evidence in addition to the thin evidence submitted that allowed this

case to proceed beyond the pleadings stage. Thus, Plaintiff continues to rely on vague assertions

regarding certain named employees. The trouble with Plaintiff's proof is that other than naming

the same names and asserting, by way of affidavit, the same allegations set forth in his pleadings,

he puts no meat on the bones of his assertions.  Importantly, he fails to amplify his factual

assertion that any such employee engaged in conduct similar to the conduct that led the Town to

investigate Plaintiff.

Plaintiff's failure to survive summary judgment as to his Section 1983 claim also

necessarily disposes of his municipal liability claim under <u>Monell</u>. Additionally, his Monell

claim fails because he cannot show any evidence of an unconstitutional custom or policy leading

to the denial of a federally protected right. <u>See</u> <u>e.g.</u>, <u>Patterson v. County of Oneida</u>, 375 F.3d 206,

227-29 (2d Cir. 2004).

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment, appearing as Docket Entry No. 44 herein, be granted in its entirety.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


Dated: Central Islip, New York
       December 16, 2019

                                              /s/ Anne Y. Shields
                                              Anne Y. Shields
                                              United States Magistrate Judge